# United States District Court
# Northern District of Indiana

| | |
|---|---|
| HOWMEDICA OSTEONICS CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:02-CV-321 JVB |
| ) | |
| ) | |
| TRANQUIL PROSPECTS LTD., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Howmedica Osteonics Corp.'s motion for attorney's fees against Defendant and its counsel pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927 (DE 142).

**A. Background and Facts**

Defendant Tranquil Prospects Ltd. was the owner of United States Patent Nos. 5,222,985 and 4,636,214 for a hip replacement prosthesis and a process for implanting joint replacement prostheses (the '985 and the '214 patents). In 1996 Defendant first wrote to Plaintiff's predecessor in interest claiming that some of its products infringed on these patents. After discussions between the parties over the course of almost six years, Defendant filed suit for infringement in late 2001, but named the wrong entity in its suit. On learning of Defendant's attempt to sue it, Plaintiff filed this declaratory judgment action for noninfringement and invalidity of Defendant's patents. Defendant counterclaimed for infringement.

On September 25, 2003, the Court issued an order construing the disputed terms in the claims.[1] It addressed the issues of whether the stem of the prosthesis claimed in the '985 patent had to be precoated before insertion into the bone and the definitions of "medullary canal" and "transverse sectional dimensions." The Court ruled that the '985 patent claimed a precoated prosthesis and adopted a definition of medullary canal that was different than the definition proposed by either of the parties:

> A typical long bone (such as a femur) contains a shaft called the diaphysis. The diaphysis contains a large marrow or medullary cavity. This cavity is surrounded by a thick-walled tube of compact bone. The inside of the compact bone may itself be lined with spongy bone. At the ends (the "epiphyses") of the long bone, there is additional spongy bone and an outer lining of compact bone. At the very ends of the long bone (at the "diaphysis") is the metaphysis, which is the "flared" part of the bone. Ross, Michael H., Lynn J. Rommell & Gordon I. Kaye. Histology: A Text And Atlas.3d. ed. Williams & Wilkins 1995, p. 153.

*Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.* 288 F. Supp. 2d 939, 944 (N.D. Ind. 2003)

The District Court was unable to construe "transverse sectional dimensions." Accordingly, the Court ruled that the disputed claims employing that term were invalid under 35 U.S.C. § 112.

Defendant filed a motion for reconsideration. The motion was fully briefed and the Court heard oral argument on it. In its decision on the motion, the Court noted that Defendant had alleged neither manifest errors of law or fact nor newly discovered evidence but nonetheless proceeded to address Defendant's arguments and reaffirmed its previous decision. Because the determination that the claims were invalid effectively terminated the litigation, the parties moved for entry of final judgment, which was granted.

---

[1]The late Honorable Alan Sharp presided over the case from its inception until April 22, 2008, eleven days after the instant motion was filed, when it was transferred to the undersigned.

Defendant appealed. The Federal Circuit Court of Appeals reversed the District Court's finding of invalidity, stating that the term "transverse sectional dimension" would be understood by one of ordinary skill in the art as a two-dimensional measurement of the cross-sectional area of the space being measured. The appellate court also reversed the District Court's finding that the "coated stem" limitation in the claims of the '985 patent required precoating of the stem of the prosthesis before insertion into the bone, holding that the limitation could also encompass a stem that becomes coated by bone cement upon insertion.

On remand the parties filed cross-motions for summary judgment. The District Court granted Plaintiff's motion for a declaration of noninfringement, holding that Defendant had failed to demonstrate that the accused products and methods meet every limitation set forth in Plaintiff's patents. Specifically, the District Court held that Defendant had failed to show that the transverse sectional dimensions of the accused products met the limitation of the patents that required the transverse sectional dimensions of the stem of the prostheses to be "at least around" 70% of the transverse sectional dimension of all portions of the metaphyseal and epiphyseal segments of the long bone and 90% of the diaphyseal bone region. Defendant had presented evidence of four measurements it had taken in the diaphyseal region and one in the meta-diaphyseal region of the bone. The highest measurement was taken approximately 7 centimeters below the top of the implant. The District Court concluded that Defendant had thus failed to demonstrate that the accused product met the 70% limitation for substantially its entire length.

Once again Defendant appealed. The Federal Circuit Court of Appeals held oral argument and then affirmed the District Court without opinion. It also summarily denied Defendant's motion for reconsideration. Plaintiff then filed this motion in the District Court,

3

requesting attorney fees and expenses of $1,507,628.46.

**B. Legal Standard**

Title 35 U.S.C. § 285 authorizes the award of reasonable attorney fees in exceptional cases, where there is a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of equal force, which makes it grossly unjust that the prevailing party be left to bear the burden of his own Counsel fees. *Purer & Co. v. Aktiebolaget Addo*, 410 F.2d 871, 880 (9th Cir. 1969); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 372 F. Supp. 2d 833, 848–49 (E.D. Va. 2005). The court should weigh considerations such as the closeness of the case, tactics of counsel, and the conduct of the parties. *J. P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1051 (Fed. Cir. 1987). A party's misconduct during litigation, frivolous, vexatious, or unjustified litigation, concealment or fraud before the PTO, and willful infringement are all circumstances that support a finding that a case is exceptional. *Beckman Instruments, Inc., v. LKB Produkter AB*, 892 F.2d 147, 1552 (Fed. Cir. 1989). There is a presumption that a claim of infringement of a duly granted patent is made in good faith. *Brooks Furniture Mfg. V. Dutailier Intern., Inc.*, 393 F.3d 1378, 1382 (Fed. Cir. 2005) (citations omitted). Accordingly, the underlying improper conduct and the characterization of the case as exceptional must be established by clear and convincing evidence. *Id.* Similarly, 28 U.S.C. § 1927 authorizes the assessment of attorney fees against lawyers: "Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings . . . unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such

conduct."

**C. Argument**

According to Plaintiff, the history of this dispute as a whole demonstrates objective bad faith, recklessness, and indifference in Defendant's conduct. Plaintiff maintains that Defendant never had evidence of its infringement, from the time it first accused Plaintiffs' products throughout the entire course of the litigation. It characterizes Defendant as a "patent troll" who attempted to extort royalties from Plaintiff without any legitimate basis to support its claims, whose conduct gave rise to baseless, vexatious, exceptional litigation. According to Plaintiff, the products and processes Defendant apparently accused of infringing on its patents had existed and been commercially exploited long before the patents came into being.

Plaintiff cites Defendant's failure to provide Plaintiff with a detailed infringement analysis and its position on claims construction before the litigation began, its abortive attempt to litigate the infringement of its patents by suing the wrong party, the alleged impropriety of its motion to reconsider the District Court's claims construction decision, its appeal of the decision despite the fact that, according to Plaintiff, its claim was doomed even if it succeeded on appeal, and its opposition to summary judgment without admissible evidence, as further examples of Defendant's vexatious conduct.

Plaintiff also charges that Defendant's expert, Dr. Hopkinson, included in his report an assertion that he had directed a "virtual surgery" with Plaintiff's Omnifit product which produced results virtually the same as those reported for Plaintiff's Strata product, despite the fact that the deposition testimony of Charles Fox, predating the report by more than a year, established that the virtual surgery using the Omnifit product had been abandoned before

5

completion.

Plaintiff further points out that Defendant accused an additional twenty models of Howmedica's prostheses of infringement, but never identified any products other than the Strata and the Omnifit.[2] Other charges against Defendant are that it abandoned its claims of infringement of the '214 in its opening appellete brief on the second appeal and pursued its claim to the '985 patent even though it had allowed the patent to expire, which precluded it from obtaining an injunction or any damages after its expiration in 2005.

Finally, Plaintiff contends that Defendant made the location of the medullary canal the central issue of the second appeal, an issue foreclosed by the District Court's definition of the term in its claims construction opinion, which Defendant's had failed to contest in the first appeal. The Plaintiff asserts that the meritlessness of the second appeal is demonstrated by the Federal Circuit's per curiam affirmation of the grant of summary judgment only two days after oral argument. The last examples of Defendant's vexatious conduct were its request for a rehearing despite the Federal Circuit Court of Appeals' standard instruction to parties that an opinion in support of it judgment is a usual prerequisite to a rehearing, and a petition for certiorari to the Supreme Court.

Defendant argues that Plaintiff has mischaracterized its conduct in the litigation. It asserts that it provided a detailed claims chart in January 2002, six months before Plaintiff filed suit. Defendant's naming of Plaintiff's predecessor in interest in Plaintiff's original suit was simply inadvertence. Its motion for reconsideration of the claims construction opinion was

---

[2]Defendant initially contended that Plaintiff's charges concerning the OMNIFIT virtual surgery were factually false, but later moved to withdraw the analysis of the OMNIFIT prosthesis filed in support of its motion for summary judgment

vindicated by the Federal Circuit Court of Appeals' reversal. Defendant maintains that the District Court's construction of "medullary canal" changed from its claims construction opinion to its summary judgment decision, something that could not have been foreseen when Plaintiff formulated the issues for the first appeal. Plaintiff denies that it waived the issue of the location of the medullary canal on the second appeal. Regarding its opposition to summary judgment after the first appeal, and Plaintiff's assertion that it offered no admissible evidence in opposition because it had relied on the unsworn report of its expert, Defendant observes that the District Court considered the evidence despite this flaw. Moreover, because, as Plaintiff admitted, Plaintiff had made the report an exhibit to its motion papers, it was available to Defendant for use in opposition. Defendant claims that its voluntary withdrawal of evidence regarding the Omnifit product is the antithesis of bad faith and makes the same claim regarding the withdrawal of the '214 patent. The '985 patent was allowed to expire inadvertently when Defendant's prosecution counsel retired and the maintenance fee was not paid. Even so Defendant continued to have a remedy with respect to the '985 patent for damages before the expiration. Defendant defends its petition for rehearing before the Federal Circuit Court of Appeals as its attempt to bring to that court's attention what it characterizes as a misrepresentation Plaintiff made during oral argument.

**D. Discussion**

To better understand the parties' positions, in addition to studying their briefs on this motion, the Court has reviewed the claims construction briefs and order, the briefs and order on the motion for reconsideration, the Federal Circuit Court of Appeals' opinion on the first appeal,

the summary judgment briefs and decision, and the transcripts of the oral arguments on the motion in District Court. The Court has found no clear and convincing evidence that this case is so exceptional as to merit an award of attorney fees. The Court does not share Plaintiff's conviction that its laundry list of instances of alleged misconduct warrants an inference of bad faith or establishes that the Defendant's infringement claims were baseless from the beginning. Inadvertently naming a predecessor of Plaintiff in a different suit is not evidence of misconduct in this suit. Nor is the Court convinced that it was so obvious that Defendant had no claim after the District Court construed "medullary canal" that proceeding with the litigation constituted misconduct. The Court finds nothing improper in Defendant's motion for reconsideration of the claims construction order. While Defendant's evidence in opposition to the summary judgment motion was insufficient to prevent summary judgment against it, it was not sanctionable. The other charges Plaintiff leveled against Defendant similarly fail to convince the Court that an award of attorney fees is in order.

**D. Conclusion**

For the foregoing reasons, Plaintiff's motion for attorney fees (DE 142) is DENIED.

SO ORDERED on August 26, 2009.

s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division
